Daniel G. Albert, J.
The plaintiffs in this action sue in a representative capacity as residents and owners of real property in the Incorporated Village of New Hyde Park, in the County of Nassau and State of New York, and also as residents and owners of real property in the unincorporated area in the Town of North Hempstead, Nassau County, known as New *831 Hyde Park, seeking a permanent injunction against the personal defendants in their capacity respectively as Mayor and members of the Board of Trustees of the Incorporated Village of New Hyde Park, and against the Incorporated Village of New Hyde Park to enjoin and restrain the defendants from maintaining certain floodlights and the poles upon which the said floodlights are erected; and to restrain the said defendants from illuminating the aforesaid floodlights, all of which are allegedly contained within an area known as the “ Memorial Park ”, located in the Incorporated Village of New Hyde Park.
The action was tried in Special Term, Part III of this court, sitting as a court of equity.
The evidence indicates that the Incorporated Village of New Hyde Park acquired by deed and condemnation a portion of a two-block area with intervening street in 1948 and that the said area is bounded on the north by the village line, on the east by William Street, on the south by Lincoln Avenue and on the west by Albert Street, and that the entire area lies wholly within the confines of the incorporated village; that the acquisition of this area was to be for the general use and purpose of a playground and recreation area by residents of the village regardless of age or occupation. Two baseball diamonds with dimensions less than regulation size were installed at the north end of the park, one on the west side and one on the east side. Since its inception the park has been used for ball playing, among its many other uses. For approximately eight or nine years the Little League, Inc., of the village apparently had requested and obtained permission to use two hall diamonds for league games, on weekday evenings, during the ball playing season, such games to commence at 6:30 p.m. There has apparently been no complaint to the Village Board regarding- this use. The difficulty, however, seems to have arisen when the Little League requested the installation of lights for use on one of the diamonds located at the northeast section of the park for the avowed purpose of enabling its teams to complete seven innings of ball playing on evenings when their games extended beyond dusk, the lights to be extinguished no later than 9:30 p.m. Such games were to he played on weekdays from Monday through Friday inclusive, during the months of June, July and August. The testimony further shows that when the Little League made this request it was bolstered by a petition signed by a number of residents living in the area who joined in the request by the Little League following a survey made by the Little League and the request to these residents that they sign a petition favoring such installation, One of the witnesses who testified in favor of the plaintiffs *832 at the trial of the action was a prime mover and signatory in obtaining the petition indorsing the request of the Little League for the installation of the floodlights. Actually, the petition requested the use of the lights for games to be played at the park not only by the youngsters of the Little League, but also by members of the Babe Ruth League. Members of the latter league apparently range in age from 12 or 13 through 16.
Evidence indicates that the poles were installed, the necessary equipment consisting of lights and wire and other materials were obtained by the Little League and that subsequent to their installation the Village Board, by resolution, authorized the use of the floodlights after adopting regulations for the use of the lighting system and placing restrictions on the use of the lights.
Plaintiffs contend, among other things, that the defendants violated existing statutes in not following the proper procedure to permit such a use as is here complained of, and also that the installation of the lighting poles and the floodlights during the times indicated constitute a public nuisance and a deprivation of the use and enjoyment of their properties because of loud and offensive noises which will emanate from the sports area and because of the traffic congestion and that the glare and reflection of the lights will attract large numbers of insects to the immediate area; also that the serenity and privacy which darkness affords will be lost to the residents of the affected area and that houses of worship in the area will not have the appropriate atmosphere or the quiet and tranquility needed to conduct their evening services. Plaintiffs also contend that the defendants, in permitting the use of the ball park and the floodlights thereon and in so committing an alleged public nuisance, are in violation of certain restrictive covenants affecting part of the lands comprising the Memorial Park, as well as the land owned and occupied by the plaintiffs.
A motion for a temporary injunction was made in this action in July of 1962, and by decision rendered by Mr. Justice Suozzi, a Justice of this court, the said motion for temporary relief was denied on the basis that ‘ ‘ no ordinance or covenant is violated by the proposed use of the floodlights. The ordinances to which reference is made in the second cause of action do not refer to the erection of poles by the Board of Trustees, and the other ordinances specified have no application at all to the proposed use. As to any restrictive covenants ba'rring the aforesaid use, a document from the Inter-County Title and Guaranty and Mortgage Company states that 1 there are no covenants and restrictions of record affecting this property as insured by us *833 under our title policy number 114006 ’, and there is no proof to the contrary.” (Opinion by Justice Suozzi, dated July 6, 1962.)
During the trial of this-action the evidence submitted by plaintiffs does not vary substantially from that which was submitted in affidavit form to the court on the application for a preliminary injunction.
It is abundantly clear that the Memorial Parle in question has been used by the residents of the Incorporated Village of New Hyde Park and similarly by residents of the unincorporated area immediately adjacent thereto for at least eight years prior to the institution of this action by the Little League and by whoever else, among the citizens of all ages, wished to use the park facilities. The use of the poles and the floodlights which are, by village ordinance, required to be turned off not later than 9:30 p.m. and only during the months of June, July and August, is obviously only for the purpose of permitting games to be completed for a very short period of time after darkness actually sets in.
After hearing all of the witnesses and carefully examining the exhibits introduced into evidence during the trial, and from a reading of the ordinances and the statutory and case law involved in this action, and upon the court personally visiting the subject area, the court cannot find that the use complained of constitutes a public nuisance and that the plaintiffs are sustaining or are likely to sustain irreparable damage because of the action on the part of the defendants in permitting the use of Memorial Park for ball playing purposes and the use of floodlights for approximately one hour after dusk sets in during the Summer months.
The court cannot agree that the mere use of the lights for a period of approximately one hour after dusk during the Summer months only will result in such a change in the character of the neighborhood as to constitute a public nuisance resulting in irreparable damages to the plaintiffs.
Municipalities not only may, but by legislative fiat must provide park and recreational facilities as public requirements for their residents. In the case of Incorporated Vil. of Lloyd Harbor v. Town of Huntington (4 N Y 2d 182, 191) Judge Fuld, in enunciating this policy for the Court of Appeals, stated as follows: “Indeed, the Village Law actually includes parks among public services and activities deemed essential. Thus, section 177 of the Village Law requires that zoning regulations shall ‘ facilitate the adequate provision of transportation, water, sewerage, schools, parles and other public requirements. ’ In calling upon a village to provide for parks, in denominating *834 them a 1 public requirement, ’ the Legislature has in effect declared them to have a public purpose and to be in furtherance of public health and welfare. If villages may not zone, as we have held, against churches and schools, with their playgrounds and parking fields, they may not be permitted to zone against public parks and beaches.”
Accordingly, the court is of the opinion that, under all of the circumstances and the evidence submitted on the trial of this action, that the construction and use of the floodlights and the use of the Memorial Park for the playing of baseball do not constitute public nuisances; are not in violation of the village ordinances; and do not breach any restrictive covenants shown to the court. The complaint is therefore dismissed.